ACCEPTED
03-15-00539-CR
7746059
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/9/2015 2:29:39 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00539-CR**
**IN THE**
**COURT OF APPEALS**
**OF THE THIRD SUPREME JUDICIAL DISTRICT**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/9/2015 2:29:39 PM
JEFFREY D. KYLE
Clerk

_____

MATTHEW DIAZ,
Appellant,


v.


STATE OF TEXAS

_____


Appeal in Cause No. 72269
in the 426th District Court of
Bell County, Texas

_____


**BRIEF FOR APPELLANT MATTHEW DIAZ**

_____

JOHN A. KUCHERA
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Appellant

i

## Identity of Judge, Parties, and Counsel

Honorable Fancy H. Jezek, 426th District Court, P.O. Box 324, Belton, Texas 76513; Trial Judge

Shelly Strimple, Assistant District Attorney, Bell County, Texas, P.O. Box 540, Belton, Texas 76513; State's Trial Counsel

John Lawrence Erskine, Assistant District Attorney, Bell County, Texas, P.O. Box 540, Belton, Texas 76513; State's Trial Counsel

Randy Dale, Appellant's Trial Counsel, 2608 North Main Street, Suite B-142, Belton, Texas 76513

Bobby Barina, Appellant's Counsel for Motion to Adjudicate Guilt, 455 East Central Texas Expressway, Suite 104, Harker Heights, Texas 76548

Bob D. Odom, Assistant District Attorney, P.O. Box 540, Belton, Texas 76513, State's Appellate Counsel

John A. Kuchera, 210 N. 6th St., Waco, Texas, 76701, Appellant's Appellate Counsel

Matthew Diaz, Appellant, TDCJ # 02016599, Hutchins Unit, 1500 E. Langdon Rd.; Dallas, TX 75241

# Table of Contents

**Page**

Identity of Parties and Counsel ii

Table of Contents iii-iv

Index of Authorities v-viii

Issues Presented ix

Statement of the Case 1-2

Statement of Facts 3

Summary of the Argument 3-4

Argument and Authorities

**1.** Because the trial court violated Diaz's right to due process by assessing his sentence, based in part on ten "violations" of community supervision where either the trial court did not conduct the required hearing, or the State did not meet its burden, Diaz should be re-sentenced. 4-10

*(a) Diaz's alleged violations* 4
*(b) Failure to pay court costs, court-appointed attorney's fees and community supervision fees* 4-7
*(c) Failure to pay fine* 7-8
*(d) Due process violation* 8-10

**2.** Alternatively, because the trial court did not make an express deadly weapon finding at the time it adjudicated Diaz's guilt, the judgment should be corrected to delete the deadly weapon finding. 10-19

*(a) Background* 10-11
*(b) Making a deadly weapon finding* 11-13
*(c) A trial judge may decline to make a deadly weapon finding* 13
*(d) An additional twist: Adjudication of guilt after being placed on deferred adjudication community supervision* 13-15

*(e) The instant case:  Analysis of the deferred phase*      15-17

*(f) The instant case:  Analysis of the adjudication phase*      17-19

*(g) Ex parte Huskins*      19

**3.**  Alternatively, the trial court erred in over-assessing court costs against Diaz in the amount of $279.00.      20-26

*(a) Diaz's total court costs*      20-21

*(b) District clerk fee*      21-22

*(c) Sheriff fee*      22

*(d) Capias Warrant Fee*      23

*(e) Clerk court technology fund fee*      23

*(f) Courthouse security fee*      23

*(g) District clerk record preservation fee*      23-24

*(h) Records management fee*      24

*(i) Jury service fund fee*      24

*(j) Judiciary support fee*      24-25

*(k) Consolidated court costs*      25

*(l) Time payment fee*      25

*(m) Basic criminal legal services fee*      25

*(n) Administrative transaction fee*      25-26

*(o) State Elect Filing Fee*      26

Prayer for Relief      26-27

Certificate of Service      27

Certificate of Compliance      28

# Table of Authorities

**Page(s)**

**Cases**

*Abron v. State*,
997 S.W.2d 281 (Tex.App. – Dallas 1998, pet. ref'd)........................................14

*Anderson v. State*,
110 S.W.3d 98 (Tex. App.—Dallas 2003, no pet.) ............................................17

*Balderamos v. State*,
No. 02-13-00121-CR, 2014 WL 982352 (Tex. App.—Fort Worth
Mar. 13, 2014, no pet.)......................................................................................16

*Bourque v. State*,
No. 12-10-00123-CR, 2011 WL 1881216 (Tex. App.—Tyler May
18, 2011, no pet.) ..............................................................................................16

*Brown v. State*,
354 S.W.3d 518 (Tex.App. – Fort Worth 2011, pet. ref'd)................................5

*Ex parte Chavez*,
213 S.W.3d 320 (Tex. Crim. App. 2006) ...........................................................8

*Cleaver v. State*,
No. 09-11-00132-CR, 2011 WL 3925713 (Tex. App.—Beaumont
Aug. 24, 2011, no pet.) .....................................................................................16

*Davis v. State*,
968 S.W.2d 368 (Tex. Crim.App. 1998) (en banc) ...........................................14

*Ex parte Empey*,
757 S.W.2d 771 (Tex. Crim. App. 1988) ..........................................................12

*Gipson v. State*,
395 S.W.3d 910 (Tex.App.—Beaumont 2013), *rev'd on other
grounds,* 428 S.W.3d 107 (Tex. Crim. App. 2014)........................................5, 7

*Guerrero v. State*,
299 S.W.3d 487 (Tex. App.—Amarillo 2009, no pet.)......................................16

*Guthrie-Nail v. State*,
--- S.W.3d ---, 2015 WL 5449642 (Tex. Crim. App. Sept. 16,
2015) ...............................................................................12, 13, 18, 19

*Ex parte Hughes*,
739 S.W.2d 869 (Tex. Crim. App. 1987) ........................................................12

*Ex parte Huskins*,
176 S.W.3d 818 (Tex. Crim. App. 2005) ........................................................19

*Johnson v. State*,
No. 05-00-00464-CR, 2002 WL 1788002 (Tex. App.—Dallas Aug.
5, 2002, no pet.) (unpublished) ........................................................17

*Kinkaid v. State*,
184 S.W.3d 929 (Tex.App.-Waco 2006, no pet.)................................................16

*Labib v. State*,
239 S.W.3d 322 (Tex.App. – Houston [1st Dist.] 2007, no pet.)........................14

*McCoy v. State*,
81 S.W.3d 917 (Tex.App. – Dallas 2002, pet. ref'd)........................................14

*McGowan v. State*,
14-05-00139-CR, 2006 WL 56105 (Tex. App.—Houston [14th
Dist.] Jan. 12, 2006, pet. ref'd) (unpublished) ...............................................16

*Miller-El v. State*,
782 S.W.2d 892 (Tex. Crim. App. 1990) ..........................................................8

*Moore v. State*,
605 S.W.2d 924 (Tex. Crim. App. 1980) ..........................................................4

*Polk v. State*,
693 S.W.2d 391(Tex. Crim. App. 1985) ..........................................................12

*Rusk v. State*,
440 S.W.3d 694 (Tex.App.—Texarkana 2013, no pet.)......................................7

*Sampson v. State*,
983 S.W.2d 842 (Tex.App.–Houston [1st Dist.] 1998, pet. ref'd)......................16

*In re State*,
08-12-00165-CR, 2013 WL 634581 (Tex. App.—El Paso Feb. 20,
2013, no pet.) ......................................................................................17

*State v. Cox*,
235 S.W.3d 283 (Tex. App.—Fort Worth 2007, no pet.)..................................18

*Taylor v. State*,
131 S.W.3d 497 (Tex. Crim. App. 2004) ......................................................14, 15

*United States v. Tucker*,
404 U.S. 443 (1972)..........................................................................8, 9

*Weir v. State*,
278 S.W.3d 364 (Tex. Crim. App. 2009) .........................................................22

**Statutes**

Tex. Crim. Proc. Code Ann. art. 37.07 § 4(a).............................................19

Tex. Crim. Proc. Code Ann. art. 37.07 § 4(b) ...........................................19

Tex. Crim. Proc. Code Ann. art. 42.12 § 2(2)(A)........................................14

Tex. Crim. Proc. Code Ann. art. 42.12 § 5(a)...........................................14

Tex. Crim. Proc. Code Ann. art. 42.12 § 5(b) ...........................................14

Tex. Crim. Proc. Code Ann. art. 42.12 § 21(c)............................................5

Tex. Crim. Proc. Code Ann. art. 43.03(d) .................................................7

Tex. Crim. Proc. Code Ann. art. 43.03(d) .................................................8

Tex. Crim. Proc. Code Ann. § art. 42.01 .................................................19

Tex. Crim. Proc. Code Ann. § art. 42.12, Sec. 3g .....................................12

Tex. Code Crim. Proc. Ann. art. 102.005(a)..............................................21

Tex. Code Crim. Proc. Ann. art. 102.005(b)(2)...........................................21

Tex. Code Crim. Proc. Ann. art. 102.005(f)(1) ..........................................24

Tex. Code Crim. Proc. Ann. art. 102.005(f)(2) ..........................................23

Tex. Code Crim. Proc. Ann. art. 102.011(a)(2) ........................................................23

Tex. Code Crim. Proc. Ann. art. 102.017(d) ...........................................................23

Tex. Code Crim. Proc. Ann. art. 102.0045(a) ..........................................................24

Tex. Code Crim. Proc. Ann. art. 102.072 ................................................................26

Tex. Code Crim. Proc. Ann. art. 102.073 ................................................................22

Tex. Code Crim. Proc. Ann. art. 102.0169 (d) .........................................................23

Tex. Code Crim. Proc. Ann. art. 103.002 ...........................................................22, 26

Tex. Loc. Gov't Code Ann. § 133.102(e) ................................................................25

Tex. Loc. Gov't Code Ann. § 133.103(a) ................................................................25

Tex. Loc. Gov't Code Ann. § 133.105(a) ................................................................24

Tex. Loc. Gov't Code Ann. § 133.107(a) ................................................................25

Tex. Penal Code Ann. § 29.02 (a)(2) ......................................................................10

Tex. Penal Code Ann. § 29.03 (a)(2) ......................................................................10

**Other Authorities**

Tex. S.B. 740, 84th Leg., R.S. (2015) .....................................................................22

## Issues Presented

1.  Whether the trial court violated Diaz's right to due process by assessing his sentence, based in part on ten "violations" of community supervision where either the trial court did not conduct the required hearing, or the State did not meet its burden.

2.  Alternatively, whether because the trial court did not make an express deadly weapon finding at the time it adjudicated Diaz's guilt, the judgment should be corrected to delete the deadly weapon finding.

3.  Alternatively, whether the trial court erred in over-assessing court costs against Diaz in the amount of $279.00.

**IN THE**
**COURT OF APPEALS**
**OF THE THIRD SUPREME JUDICIAL DISTRICT**

_____

MATTHEW DIAZ,
    Appellant,


    v.                                     **No. 03-15-00539-CR**

STATE OF TEXAS

_____

Appeal in Cause No. 72269
in the 426th District Court of
Bell County, Texas

_____

**BRIEF FOR APPELLANT MATTHEW DIAZ**

_____

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

NOW COMES MATTHEW DIAZ, Appellant, by and through undersigned counsel, and submits this brief pursuant to the provisions of the Texas Rules of Appellate Procedure.


**<u>Statement of the Case</u>**

On January 22, 2014, Matthew Diaz ("Diaz") was charged by indictment, individually and as a party, with the felony offense of aggravated robbery, alleged to have been committed on or about November 7, 2013.  CR 4-5.

On March 31, 2014, Diaz pled guilty to the charged offense, pursuant to a plea agreement. CR 20-27. On April 8, 2014[1], Diaz was placed on ten years deferred adjudication community supervision, fined $1,500 and given 100 days in jail as a condition of community supervision. 2 RR 5; CR 30-33.

On June 1, 2015, at hearing on the State's first amended motion to adjudicate guilt, Diaz entered a plea of true to all violations alleged therein. 2 RR 9-10. The trial court determined the evidence was sufficient to establish the allegations were true, "[b]ut I'm going to withhold that finding." 2 RR 11.

On August 11, 2015, the trial court did find the allegations to be true, adjudicated Diaz to be guilty of the charged offense, and sentenced him to five years in prison and no fine. 3 RR 1, 16-17; CR 60-61. The trial court did not orally pronounce a deadly weapon finding.

The trial court certified Diaz's right to appeal. CR 58. Diaz timely filed his notice of appeal August 14, 2015. CR 65. Trial counsel was allowed to withdraw and undersigned counsel was appointed to represent Diaz on appeal. 3 RR 17; CR 69.

---

[1] The Order of Deferred Adjudication, though signed April 8, 2014, includes the following entry under "Date Order Entered": March 31, 2014. CR 30, 33. This would appear to be a mistake.

## Statement of Facts

The facts necessary for this Court's consideration are set forth under the respective issues.

## Summary of the Argument

**First issue:** The State alleged nineteen violations of community supervision in its First Amended Motion to Adjudicate Diaz's guilt. Ten of those violations had to do with Diaz being financially delinquent. Nine of these ten violations required the State to put on evidence tending to show that Diaz was willfully delinquent. The State put on no such evidence. One of these ten violations (Diaz being behind on his fine payments), in order to serve as a violation of community service, required the trial court to find that Diaz was not indigent and that he had the ability to pay the fine. The trial court made no such findings. Nonetheless, the trial court determined Diaz's sentence based on the misinformed belief that he had committed nineteen violations, when in fact legally, he had committed only nine violations. This constituted a violation of Diaz's right to due process.

**Second issue:** The trial court did not make a deadly weapon finding at the time it adjudicated Diaz's guilt and sentenced him. Therefore, the deadly weapon finding should be deleted from the written judgment.

3

**Third issue:** The trial court overcharged Diaz $279 in court costs. The written judgment should be modified to reflect the correct amount of court costs owed.

## Argument and Authorities

**1. Because the trial court violated Diaz's right to due process by assessing his sentence, based in part on ten "violations" of community supervision where either the trial court did not conduct the required hearing, or the State did not meet its burden, Diaz should be re-sentenced.**

*(a) Diaz's alleged violations*

The State's first amended motion to adjudicate guilt alleged that Diaz committed nineteen violations of community supervision. CR 46-48. The trial court determined Diaz's sentence based on a finding that all nineteen violations were true. CR 60. However, ten of the violations involved financial delinquencies.[2]

*(b) Failure to pay court costs, court-appointed attorney's fees and community supervision fees*

---

[2] Because there were violations to which Diaz stipulated that did not involve financial delinquencies, the trial court did not abuse its discretion in adjudicating Diaz's guilt and imposing a sentence. *See Moore v. State,* 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) (proof of a single violation of the terms of community supervision is sufficient to support revocation).

4

Article 42.12 § 21(c) of the Code of Criminal Procedure, the ability-to-pay statute, provides in relevant part:

> In a community supervision revocation hearing at which it is alleged only[3] that the defendant violated the conditions of community supervision by failing to pay compensation paid to appointed counsel, community supervision fees, or court costs, *the state must prove* by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge. (emphasis added)

Tex. Crim. Proc. Code Ann. art. 42.12 § 21(c) (West Supp. 2014). Each of the following of Diaz's alleged violations comes within the purview of this statute:

> D. has violated condition #4 in that he failed to obtain drug/alcohol screening and/or testing and counseling as indicated under the direction of the Community Supervision Officer *at own expense.* He failed to complete Drug Offenders Course[4] as directed on December 9, 2014.

CR 46.

> J. has violated condition #22 in that he failed to pay $251.00 in Court Costs to be paid $10.00 per month. He is delinquent $120.00.

CR 47.

> L. has violated condition #22 in that he failed to pay $450.00 Court Appointed Attorney fees to be paid $10.00 per month. He is delinquent $120.00.

---

[3] The word "only" does not mean that this statute only applies when the State alleges nothing more than monetary violations of community supervision. *Brown v. State,* 354 S.W.3d 518, 520 n. 3 (Tex.App. – Fort Worth 2011, pet. ref'd).

[4] This would be considered a court cost. *See Gipson v. State,* 395 S.W.3d 910, 914 (Tex.App.— Beaumont 2013) ("PSI and Crime Stoppers fees are often assessed as court costs; thus, we conclude these costs may be included within the statute's purview."), *rev'd on other grounds,* 428 S.W.3d 107 (Tex. Crim. App. 2014).

CR 47.

M. has violated condition #22 in that he failed to pay $35.00 Life Skills program fee.[5]  He is delinquent $35.00.

CR 47.

N. has violated condition #22 in that he failed to pay $75.00 Pre-Sentence Investigation report fee.  He is delinquent $75.00.

CR 47.

O. has violated condition #22 in that he failed to pay $10.00 Substance Abuse Questionnaire fee.[6]  He is delinquent $10.00.

CR 47.

P.  has violated condition #22 in that he failed to pay $60.00 Supervision fee per month for each month of the supervision period.  He is delinquent $310.00.

CR 47.

Q. has violated condition #22 in that he failed to pay $25.00 Substance Abuse Test fee[7] per month for each month of the direct supervision period while on specialized caseload/$10.00 per fee per month for each month of the direct supervision period while on regular caseload.  He is delinquent $130.00.

CR 48.

S. has violated condition #26 in that he failed to participate in and successfully complete a Violence Intervention Program,[8] *at own expense*, within time period directed by Community Supervision Officer.  On April 2, 2014, he was referred to the Center for Cognitive Education for Violence Intervention Program.  He has failed to provide proof of completion.

---

[5] See footnote 4.
[6] See footnote 4.
[7] See footnote 4.
[8] See footnote 4.

CR 48. The fact the Diaz pled true to these allegations established only that he was delinquent. His plea of true did not establish that he was able to pay but did not pay. *Gipson,* 395 S.W.3d at 914 ("[a] plea of 'true' does not constitute an admission of *willfully* failing to pay."); *Rusk v. State,* 440 S.W.3d 694, 700 n. 8 (Tex.App.— Texarkana 2013, no pet.). The State put on no evidence tending to show that Diaz had the ability to pay but chose not to.[9]

*(c) Failure to pay fine*

Diaz was also alleged to be delinquent in making his fine payments:

> K. has violated condition #22 in that he failed to pay $1,500.00 Fine to be paid $15.00 per month. He is delinquent $180.00.

CR 47.

Article 43.03 of the Code of Criminal Procedure, entitled "Payment of Fine," provides in pertinent part as follows:

> A court may not order a defendant confined [for defaulting in payment of a fine or costs] unless the court at a hearing *makes a written determination* that:
>
> The defendant is not indigent and has failed to make a good faith effort to discharge the fines and costs; or

---

[9] Diaz's sister testified at the sentencing hearing: "I know the reason why he [Diaz] stopped reporting he was discouraged he couldn't find a job." 3 RR 6.

> The defendant is indigent and has failed to make a good faith effort to discharge the fines and costs under Article 43.09(f); and could have discharged the fines and costs under Article 43.09 without experiencing any undue hardship.  (emphasis added)

Tex. Crim. Proc. Code Ann. art. 43.03(d) (West Supp. 2014).  The Clerk's Record does not contain any sort of written determination that the trial court found the above-referenced facts regarding Diaz's delinquency in paying his fine.

### (d) Due process violation

At the punishment stage, the trial court generally has discretion to assess whatever punishment within the prescribed range it sees fit.  *Miller-El v. State,* 782 S.W.2d 892, 895 (Tex. Crim. App. 1990).  However, principles of due process require that a sentencing court's normative judgment not be misinformed.  *Ex parte Chavez,* 213 S.W.3d 320, 324 (Tex. Crim. App. 2006).  In *United States v. Tucker*, 404 U.S. 443 (1972) the defendant was convicted by a jury of armed bank robbery.  At sentencing, the district court assessed a sentence of twenty-five years in prison, based in part on the fact that the defendant had three prior felony convictions.  *Id.* at 444.  Years later it was determined that two of the three prior felony convictions were constitutionally invalid because the defendant had not been represented by counsel, nor had he intelligently waived his right to counsel.  *Id.* at 445.  The

8

Supreme Court affirmed the Court of Appeals' decision to vacate defendant's sentence and remand for re-sentencing:

> [W]e deal here, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude. As in Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690, 'this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue.' . . . The record in the present case makes evident that the sentencing judge gave specific consideration to the respondent's previous convictions before imposing sentence upon him. Yet it is now clear that two of those convictions were wholly unconstitutional[.] [T]he real question here is not whether the results of the Florida and Louisiana proceedings might have been different if the respondent had had counsel, but whether the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained. We agree with the Court of Appeals that the answer to this question must be 'yes.' For if the trial judge in 1953 had been aware of the constitutional informity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding.

*Id.* at 447-48.

In the instant case, the trial court imposed Diaz's sentence based in part on a finding that ten alleged "violations" were true, when in fact these ten allegations should not have been considered violations, given the State's failure to meet its burden of proof regarding court-appointed counsel fees, community supervision fees and court costs, and the court's failure to make a finding regarding Diaz's failure to

make a good faith effort to discharge the fine and costs.[10]  Because the trial court

determined what sentence to impose based on "misinformation" – ten non-violations

– Diaz's due process rights were affected.

**2.  Alternatively, because the trial court did not make an express deadly weapon finding at the time it adjudicated Diaz's guilt, the judgment should be corrected to delete the deadly weapon finding.**

*(a) Background*

Diaz's indictment reads in relevant part as follows:

> Matthew Diaz . . . Defendant, on or about the7th day of November. . . 2013 . . . did then and there, individually and as a party with Deontavius D'Tarris Griffin, Patrick O'Neal Johnson and Jeremy Michael Oaties, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally and knowingly threaten or place Jose Rolando Hernandez-Torres in fear of imminent bodily injury or death, and the defendant did th[e]n and there use or exhibit a deadly weapon, to-wit:  a firearm.

CR 4.  The indictment alleges aggravated robbery, the aggravating factor being the

use/exhibition of a deadly weapon.[11]

---

[10] As to Diaz's indigence, the trial court had already determined that he was indigent and appointed counsel to represent him in the motion to adjudicate proceedings.  CR 49-51.

[11] A person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of the property, "he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 29.02 (a)(2) (West 2011).  A person commits aggravated robbery if he commits robbery and he "uses or exhibits a deadly weapon." Tex. Penal Code Ann. § 29.03 (a)(2) (West 2011).

Diaz's Order of Deferred Adjudication, under Findings on Deadly Weapon, reads as follows: "Yes, a firearm"[.] CR 30. The trial court brought this to Diaz's attention at the hearing on State's First Amended Motion to Adjudicate:

Court: You were previously placed on deferred adjudication in this case by a written order that's dated April the 8th of 2014. And at that time you were placed on ten-year deferred adjudication probation for the felony offense of aggravated robbery.

Diaz: Yes, ma'am.

Court: And that included a finding of a deadly weapon. You understand that?

Diaz: Yes, ma'am.

2 RR 5. However, at sentencing, the district court made no mention of a deadly weapon finding:

Mr. Diaz, at this time I'm finding that the allegations in the State's Motion to Adjudicate are true. I'm finding you guilty of the felony offense of aggravated robbery. It's the judgment of the court, sir, that you serve five years in the Institutional Division of the Texas Department of Criminal Justice. I'll also order that you pay all court costs in this case.

3 RR 16. Nonetheless, Diaz's written Judgment Adjudicating Guilt provides under "Findings on Deadly Weapon: Yes, a firearm"[.] CR 60.

*(b) Making a deadly weapon finding*

11

Article 42.12, Sec. 3g. lists the circumstances wherein a trial court is precluded from placing a defendant on community supervision. Included in this list is:

> when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited.

Tex. Crim. Proc. Code Ann. § art. 42.12, Sec. 3g. (a)(2) (West Supp. 2014). In this circumstance, the trial court has the following duty:

> On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment.

*Id.* The Court of Criminal Appeals has construed this sentence to require that (1) the trier of fact must make an affirmative deadly weapon finding, and (2) the trial judge must enter that affirmative finding in the judgment. *Ex parte Empey,* 757 S.W.2d 771, 774-75 (Tex. Crim. App. 1988); *Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985). These are separate and distinct requirements. The fact that a judgment includes the phase "deadly weapon" does not constitute a deadly weapon *finding*. *Ex parte Hughes*, 739 S.W.2d 869, 870-71 (Tex. Crim. App. 1987).

Furthermore, "[a]n affirmative deadly-weapon finding must be an "express" determination in order to be effective." *Guthrie-Nail v. State*, --- S.W.3d ---, 2015 WL 5449642, at *2 (Tex. Crim. App. Sept. 16, 2015). A trial judge may satisfy this "express" requirement by "explicitly saying that a deadly-weapon finding is being

12

made," or by making reference to a charging instrument that includes a deadly weapon allegation (e.g. the defendant is found guilty "as charged in the indictment").

*Id.*

### (c) A trial judge may decline to make a deadly weapon finding

Recently the Court of Criminal Appeals held that a trial judge has discretion to decline to make a deadly-weapon finding even when the use of a deadly weapon is a necessary element of the charged offense and the defendant has entered a plea of guilty to that offense:

> We conclude . . . that a trial judge has the discretion to decline to make a deadly-weapon finding even after finding the defendant guilty of an offense in which use of a deadly weapon was a charged or necessary element.

*Guthrie-Nail v. State*, 2015 WL 5449642, at *4.

### (d) An additional twist:  Adjudication of guilt after being placed on deferred adjudication community supervision

Deferred adjudication community supervision ("deferred") is defined as follows:

> "Community supervision" means the placement of a defendant by a court under a continuum of programs and sanctions, with conditions imposed by the court for a specified period during which . . . *criminal proceedings are deferred without an adjudication of guilt.*  (emphasis added)

Tex. Crim. Proc. Code Ann. art. 42.12 § 2(2)(A) (West Supp. 2014); Tex. Crim. Proc. Code Ann. art. 42.12 § 5(a) (West Supp. 2014) (When a defendant is placed on deferred, there is no adjudication of guilt). Deferred is not a sentence, not even a suspended sentence. *Davis v. State,* 968 S.W.2d 368, 371 (Tex. Crim.App. 1998) (en banc); *Labib v. State,* 239 S.W.3d 322, 329 (Tex.App. – Houston [1st Dist.] 2007, no pet.).

However, "[a]fter an adjudication of guilt, *all proceedings,* including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred." (emphasis added) Tex. Crim. Proc. Code Ann. art. 42.12 § 5(b) (West Supp. 2014). Stated another way, "criminal proceedings" do not begin until the defendant's guilt is adjudicated. The trial court's judgment adjudicating guilt sets aside the underlying deferred adjudication order. *Abron v. State,* 997 S.W.2d 281, 281 (Tex.App. – Dallas 1998, pet. ref'd); *McCoy v. State,* 81 S.W.3d 917, 919 (Tex.App. – Dallas 2002, pet. ref'd) ("By adjudicating guilt, the trial court supplants its previous order deferring adjudication of guilt and imposing community supervision."). In *Taylor v. State,* 131 S.W.3d 497 (Tex. Crim. App. 2004), wherein appellant had been on deferred adjudication and ordered to pay a fine -- but then had his guilt adjudicated with no pronouncement of fine -- appellant argued that it was

14

improper for the trial court to include a fine in the written judgment. *Id.* at 499. The Court of Criminal Appeals agreed with appellant:

> [W]hen an accused receives deferred adjudication, no sentence is imposed. Then, when guilt is adjudicated, the order adjudicating guilt sets aside the order deferring adjudication, including the previously imposed fine. . . . In this case, the order granting Taylor deferred adjudication was set aside. Taylor was not sentenced until his guilt was adjudicated. At that time, the judge did not orally pronounce a fine, but included a fine within the written judgment. When there is a conflict between the two, the oral pronouncement controls. Since the judge did not orally assess a fine as part of Taylor's sentence when guilt was adjudicated, the Court of Appeals was correct to delete the fine from the judgment.

*Id.* at 502.

*(e) The instant case: Analysis of the deferred phase*

As noted above, the charging instrument that formed the basis for Diaz initially being placed on deferred adjudication community supervision ("deferred") alleged aggravated robbery, and the aggravating factor was the use/exhibition of a deadly weapon. Stated another way, the use/exhibition of a deadly weapon was a necessary element of the charged offense. And the Order placing Diaz on deferred purported to make a deadly weapon finding.[12] CR 30. At least eight intermediate Courts of Appeal have held that it is improper to place a defendant on deferred and

---

[12] The actual colloquy from when Diaz initially entered his plea and was placed on deferred is not presently part of the record.

also make a deadly weapon finding. *See Guerrero v. State*, 299 S.W.3d 487, 490 (Tex. App.—Amarillo 2009, no pet.) ("The purpose of the deadly weapon finding is to assist in calculating a prisoner's parole eligibility date. . . . Yet, such a finding would prevent a trial court from opting to defer the adjudication of guilt[.]"); *Balderamos v. State*, No. 02-13-00121-CR, 2014 WL 982352, at *1 (Tex. App.—Fort Worth Mar. 13, 2014, no pet.) (mem. op., not designated for publication) ("One purpose of entering an affirmative deadly-weapon finding is to assist the Texas Department of Criminal Justice . . . in calculating a prisoner's parole-eligibility date. . . . Parole eligibility applies to incarcerated individuals and is not applicable or appropriate in an order of deferred adjudication."); *Cleaver v. State*, No. 09-11-00132-CR, 2011 WL 3925713, at *3 (Tex. App.—Beaumont Aug. 24, 2011, no pet.) (mem. op., not designated for publication) ("In deferred adjudication community supervision cases, a deadly weapon finding is properly made at the time of revocation."); *Sampson v. State,* 983 S.W.2d 842, 843 (Tex.App.–Houston [1st Dist.] 1998, pet. ref'd) ("[A]n affirmative finding of a deadly weapon is not applicable to an order of deferred adjudication because parole eligibility only applies to persons who are imprisoned."); *McGowan v. State*, 14-05-00139-CR, 2006 WL 56105, at *4 (Tex. App.—Houston [14th Dist.] Jan. 12, 2006, pet. ref'd) (unpublished) (same); *Kinkaid v. State,* 184 S.W.3d 929, 930 (Tex.App.-Waco 2006, no pet.) (same); *Bourque v. State*, No. 12-10-00123-CR, 2011 WL 1881216, at *2

16

(Tex. App.—Tyler May 18, 2011, no pet.) (mem. op., not designated for publication) (A trial court may not place a defendant on deferred adjudication community supervision . . . if the trial court has made an affirmative finding on a deadly weapon allegation."); *Johnson v. State*, No. 05-00-00464-CR, 2002 WL 1788002, at \*3 (Tex. App.—Dallas Aug. 5, 2002, no pet.) (unpublished) ("An affirmative finding of a deadly weapon is not applicable to an order of deferred adjudication because parole eligibility only applies to persons who are imprisoned.")[13]. Therefore, the deadly weapon *"finding"* in Diaz's Order deferring adjudication was a nullity. *See Anderson v. State,* 110 S.W.3d 98, 99 (Tex. App.—Dallas 2003, no pet.) (portion of order dismissing indictment for DWI conviction because defendant had successfully completed his probation was "a nullity and is void" because code of criminal procedure did not authorize such an order).

*(f) The instant case:  Analysis of the adjudication phase*

As noted above, the trial court reminded Diaz at the hearing on the State's First Amended Motion to Adjudicate Guilt that the court had made a deadly weapon "finding" at the time Diaz was placed on deferred.  2 RR 5.  However, for the reasons

---

[13] But cf. *In re State,* 08-12-00165-CR, 2013 WL 634581, at \*4 (Tex. App.—El Paso Feb. 20, 2013, no pet.) (district court directed pursuant to a writ of mandamus to enter a deadly weapon finding in a deferred adjudication order to comply with terms of plea agreement).

just cited, that "finding" was a nullity. Furthermore, when the trial court adjudicated Diaz's guilt, the previous order deferring adjudication of guilt was supplanted, set aside; the trial court was now writing on a clean slate. At sentencing, the district court made no express deadly weapon finding:

> Mr. Diaz, at this time I'm finding that the allegations in the State's Motion to Adjudicate are true. I'm finding you guilty of the felony offense of aggravated robbery. It's the judgment of the court, sir, that you serve five years in the Institutional Division of the Texas Department of Criminal Justice. I'll also order that you pay all court costs in this case.

3 RR 16. However, the court did state: "I'm finding you guilty of the felony offense of aggravated robbery."[14] 3 RR 16. As noted above, use/exhibition of a deadly weapon was a necessary element of the offense of aggravated robbery as alleged in the indictment. But in light of *Guthrie-Nail*, the trial court's adjudication of guilt as to the charged offense did not, in and of itself, constitute an express deadly weapon finding, given the court's discretion to withhold such a finding even when use of a deadly weapon was a necessary element of the offense. Because the trial court did not orally make an express deadly weapon finding at the time it adjudicated Diaz's guilt and sentenced him, there is no deadly weapon finding.

---

[14] The trial court's sentencing docket sheet says "yes" under deadly weapon finding. CR 75. However, a docket sheet entry is not an order. *State v. Cox*, 235 S.W.3d 283, 285 (Tex. App.—Fort Worth 2007, no pet.).

The importance of deleting the deadly weapon language from Diaz's judgment adjudicating guilt cannot be overstated. "The sentence served shall be based on the information contained in the judgment." Tex. Crim. Proc. Code Ann. § art. 42.01 (West Supp. 2014). Without the deadly weapon language, Diaz would become parole eligible when his good time plus his flat time equals one quarter of his sentence. See Tex. Crim. Proc. Code Ann. art. 37.07 § 4(b) (West Supp. 2014). However, if the deadly weapon language remains in the judgment he will not become parole eligible until he has done half of his time flat. See Tex. Crim. Proc. Code Ann. art. 37.07 § 4(a) (West Supp. 2014).

*(g) Ex parte Huskins*

The State may counter by citing *Ex parte Huskins,* 176 S.W.3d 818 (Tex. Crim. App. 2005), wherein the Court of Criminal Appeals stated: "[A] trial court is not required to orally announce a deadly-weapon finding at sentencing if the allegation of use of a deadly weapon is clear from the face of the indictment." *Id.* at 821. Diaz argues that this language has been implicitly disapproved of by the Court of Criminal Appeals in *Guthrie-Nail.* If a trial court retains the discretion to decline to make a deadly weapon finding, even when such a finding is a necessary element of the adjudicated offense, then the only way to make an express deadly weapon finding in such a circumstance is to *explicitly orally pronounce* it.

**3. Alternatively, the trial court erred in over-assessing court costs against Diaz in the amount of $279.00.**

*(a) Diaz's total court costs*

The bill of cost filed in connection with Diaz's adjudication of guilt includes the following:

| | |
|---|---|
| District Clerk | $40.00 |
| | $40.00 |
| Sheriff | $25.00 |
| | $25.00 |
| Capias Warrant Fee | $50.00 |
| Clerk Court Technology Fund | $4.00 |
| | $4.00 |
| Courthouse Security | $5.00 |
| | $5.00 |
| District Clerk Record Preservation | $2.50 |
| | $2.50 |
| Records Management | $22.50 |
| | $22.50 |
| Jury Service Fund | $4.00 |

| | |
|---|---|
| | $4.00 |
| Judiciary Support | $6.00 |
| | $6.00 |
| Consolidated Court | $133.00 |
| | $133.00 |
| Time Payments | $25.00 |
| Basic Criminal Legal Services | $2.00 |
| | $2.00 |
| Administrative Transaction Fee | $2.00 |
| | $2.00 |
| State Elect Filing Fee | $5.00 |
| | <u>$5.00</u> |
| | $577.00 |

CR 63-64.

*(b) District clerk fee*

This $40 fee was properly assessed – *the first time*. See Tex. Code Crim. Proc. Ann. art. 102.005(a). Article 102.005 provides "A defendant convicted of an offense in a . . . district court shall pay for the services of the clerk of the court a fee of $40." Tex. Code Crim. Proc. Ann. art. 102.005(a). (West 2006). "[A] person is consider convicted if . . . the person receives community supervision, including deferred adjudication[.]" Tex. Code Crim. Proc. Ann. art. 102.005(b)(2). The Bill of Cost

indicates that Diaz was assessed the $40 fee at the time he was initially placed on deferred, and again at the time his guilt was adjudicated. CR 34, 63. He should not have to pay this fee twice. In *Weir v. State*, 278 S.W.3d 364, 366 (Tex. Crim. App. 2009), the Court of Criminal Appeals held "an assessment of court costs against convicted defendants, was intended by the Legislature as a nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case." Court costs can only be nonpunitive if they are imposed only one time in one criminal action. The legislature recently acted Senate Bill 740 (Tex. Code Crim. Proc. Ann. art. 102.073) to make sure that court costs are assessed on each criminal action – not each count. Tex. S.B. 740, 84th Leg., R.S. (2015). The second $40 fee should not have been assessed.

*(c) Sheriff fee*

Article 102.011 of the Code of Criminal Procedure provides for the payment of fees for the services of peace officers under certain circumstances. Tex. Code Crim. Proc. Ann. art. 102.011. However there is no service listed therein that calls for payment of $25.00. A bill of costs may not charge for a service not expressly provided by law. Tex. Code Crim. Proc. Ann. art. 103.002. Because there is no statutory basis for this fee, it should not have been assessed one time – let alone two times.

22

*(d) Capias Warrant Fee*

This $50 fee was properly assessed.  See Tex. Code Crim. Proc. Ann. art. 102.011(a)(2).

*(e) Clerk court technology fund fee*

There is a statutory basis for this fee.  See Tex. Code Crim. Proc. Ann. art. 102.0169 (d).  However, the Bill of Cost indicates that Diaz was assessed the $4 fee at the time he was initially placed on deferred, and again at the time his guilt was adjudicated.  CR 34, 63.  For the reasons set forth above, he should not have to pay this fee twice.

*(f) Courthouse security fee*

There is a statutory basis for this fee.  See Tex. Code Crim. Proc. Ann. art. 102.017(d).  However, the Bill of Cost indicates that Diaz was assessed the $5 fee at the time he was initially placed on deferred, and again at the time his guilt was adjudicated.  CR 34, 63.  For the reasons set forth above, he should not have to pay this fee twice.

*(g) District clerk record preservation fee*

There is a statutory basis for this fee.  See Tex. Code Crim. Proc. Ann. art. 102.005(f)(2).  However, the Bill of Cost indicates that Diaz was assessed the $2.50

fee at the time he was initially placed on deferred, and again at the time his guilt was adjudicated. CR 34, 63. For the reasons set forth above, he should not have to pay this fee twice.

*(h) Records management fee*

There is a statutory basis for this fee. See Tex. Code Crim. Proc. Ann. art. 102.005(f)(1). However, the Bill of Cost indicates that Diaz was assessed the $22.50 fee at the time he was initially placed on deferred, and again at the time his guilt was adjudicated. CR 34, 63. For the reasons set forth above, he should not have to pay this fee twice.

*(i) Jury service fund fee*

There is a statutory basis for this fee. See Tex. Code Crim. Proc. Ann. art. 102.0045(a). However, the Bill of Cost indicates that Diaz was assessed the $4.00 fee at the time he was initially placed on deferred, and again at the time his guilt was adjudicated. CR 34, 63. For the reasons set forth above, he should not have to pay this fee twice.

*(j) Judiciary support fee*

There is a statutory basis for this fee. See Tex. Loc. Gov't Code Ann. § 133.105(a). However, the Bill of Cost indicates that Diaz was assessed the $6.00 fee at the time he was initially placed on deferred, and again at the time his guilt was

adjudicated. CR 34, 63. For the reasons set forth above, he should not have to pay this fee twice.

*(k) Consolidated court costs*

There is a statutory basis for this fee. See Tex. Loc. Gov't Code Ann. § 133.102(e). However, the Bill of Cost indicates that Diaz was assessed the $133.00 fee at the time he was initially placed on deferred, and again at the time his guilt was adjudicated. CR 34, 63. For the reasons set forth above, he should not have to pay this fee twice.

*(l) Time payment fee*

This $25.00 fee was properly assessed. See Tex. Loc. Gov't Code Ann. § 133.103(a).

*(m) Basic criminal legal services fee*

There is a statutory basis for this fee. See Tex. Loc. Gov't Code Ann. § 133.107(a). However, the Bill of Cost indicates that Diaz was assessed the $2.00 fee at the time he was initially placed on deferred, and again at the time his guilt was adjudicated. CR 34, 63. For the reasons set forth above, he should not have to pay this fee twice.

*(n) Administrative transaction fee*

25

This is a fee "for each transaction" relating to the collection of costs imposed by the court. Tex. Code Crim. Proc. Ann. art. 102.072. The Bill of Cost indicates that Diaz was assessed the $2.00 fee at the time he was initially placed on deferred, and again at the time his guilt was adjudicated. CR 34, 63. Assuming each event constituted a different transaction, this was arguably proper.

*(o) State Elect Filing Fee*

Undersigned counsel can find no statutory basis for the assessment of this fee. A bill of costs may not charge for a service not expressly provided by law. Tex. Code Crim. Proc. Ann. art. 103.002. And yet the Bill of Cost indicates that Diaz was assessed the $5 fee at the time he was initially placed on deferred, and again at the time his guilt was adjudicated. CR 34, 63. This fee should not have been assessed either time.

The bottom line is that Diaz's court costs should be reduced from $577.00 to $298.00.

## Prayer

Because the trial court violated Diaz's right to due process by determining his sentence based in part on ten "non-violations" of his community supervision, Diaz requests that his sentence be vacated and the cause remanded for re-sentencing.

Alternatively, Diaz requests that the judgment be corrected to delete the deadly weapon finding and to change the amount owed for court costs from $577.00 to $298.00.

Respectfully submitted,

/s/ John A. Kuchera

John A. Kuchera
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Appellant

## Certificate of Service

This is to certify that a true and correct copy of the above and foregoing Brief has this 9th day of November, 2015 been mailed to:

Mr. Bob D. Odom, Assistant District Attorney, P.O. Box 540, Belton, Texas 76513

/s/ John A. Kuchera
John A. Kuchera,
Attorney for Matthew Diaz

## Certificate of Compliance with Rule 9.4

1. This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i) because the brief contains 5,738 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

2. This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) and the type style requirements of Tex. R. App. P. 9.4(e) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman, size 14 font.

<u>/s/ John A. Kuchera</u>
John A. Kuchera,
Attorney for Matthew Diaz

Dated:  November 9, 2015